IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| DENISE CALZARETTA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:14-CV-5065-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Denise Calzaretta seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The Administrative Law Judge ("ALJ") found Plaintiff suffered from the severe impairment of complex regional pain syndrome, but she retained the residual functional capacity ("RFC") to perform her past relevant work as a pharmacy technician and a teacher's aide.

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's denial of benefits is AFFIRMED.

### Factual and Procedural Background

A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed her application on September 12, 2011, alleging a disability onset date of March 1, 2004. Plaintiff's date of last insured was December 31, 2011. So to receive benefits, she had to demonstrate that she was disabled between March 1, 2004 and December 31, 2011. *See Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (noting that the plaintiff must establish

that she was disabled between the alleged disability onset date and the date of last insured). The Commissioner found she failed to do so, and Plaintiff requested an ALJ to review this decision. The ALJ conducted a telephonic hearing, and on April 19, 2013, he rendered a decision finding that Plaintiff was not disabled. Plaintiff appealed to the Social Security Administration Appeals Council, which denied review. This denial left the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be

expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[1]

Plaintiff raises two Step Four arguments: (1) the ALJ erred by discounting her credibility; and (2) the ALJ erred in discounting the opinion of her treating physician Ron Ellis, M.D. ("Dr. Ellis"). The Court addresses each argument in turn.

**I. Substantial evidence supports the ALJ's credibility determination.**

Throughout the application process, Plaintiff steadfastly claimed that the pain from an allegedly botched dental procedure rendered her disabled. The ALJ ultimately found that this procedure resulted in the severe impairment of complex regional pain syndrome, but in formulating the RFC, the ALJ found Plaintiff's subjective allegations of disabling pain less than fully credible. To support this conclusion, the ALJ cited: (1) inconsistencies between her allegations and the objective medical records; (2) her history of fulltime and part-time work following the dental procedure; and (3) the incongruity between her daily activities and subjective allegations. R. at 27-29. Plaintiff contends the ALJ erred in so concluding.

In analyzing a claimant's subjective complaints of pain, the ALJ considers the entire record, including: medical records; statements from the claimant and third parties; the claimant's daily activities; the duration, frequency, and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). When the ALJ

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. § 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

articulates inconsistencies that undermine the claimant's subjective complaints and those inconsistencies are supported by the record, the ALJ's credibility determination should be affirmed. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004).

Here, the ALJ's reasons for discrediting Plaintiff's subjective allegations all find support in the record. First, treatment records show that Plaintiff's medications and injections reduced her pain levels. R. at 291-93, 295-98, 303, 316, 320, 337, 342, 347-48, 351-52, 355-56, 414-17, 521-22. For instance, during a visit with Dr. Ellis in January 2010, Plaintiff claimed she experienced an "excellent reduction in her pain once again." R. 337. Moreover, on other occasions, Plaintiff reported to other treatment providers that she experienced no pain, or that the pain subsided to the point that over-the-counter medications were effective. R. at 325, 396, 408, 416, 421. Thus, the ALJ did not err in finding that her credibility was undermined by the lack of medical evidence supporting her allegations and her impairment's responsiveness to medication. *See Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (holding that an ALJ may discount subjective complaints that conflict with medical records); *Rankin v. Apfel*, 195 F.3d 427, 430 (8th Cir. 1999) (noting that an ALJ may consider a claimant's use of over-the-counter medications in lieu of prescribed medications); *see also Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009) (noting that if an impairment is controlled by medication, it is not disabling).

Second, the record shows that Plaintiff continued to work during the disability period. For at least six months after her disability onset date, Plaintiff worked fulltime as a pharmacy technician. R. at 286. And she worked part-time at this same position for another two years thereafter. R. at 142. Working long after her disability onset date undercuts her complaints of disabling pain. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

Third, Plaintiff's *actual* daily activities were inconsistent with her complaints of disabling pain. In her function report, Plaintiff claimed rather limited daily activities: watching television, performing few household chores, shopping on an infrequent basis, rarely lifting items around the house, and never performing yard work. R. at 175-80. Plaintiff claimed that these limited activities were the result of her jaw pain and the side effects from her medication. R. at 180. However, treatment notes from medical professionals paint a different picture. On May 30, 2011, a medical provider at St. John's Hospital treated her for a muscle strain caused by gardening and lifting her grandson. R. at 375. On another occasion during the relevant disability period, Plaintiff told her primary care physician that she was "exercising a lot." R. at 244. These inconsistencies detract from her credibility. *See McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (noting that an ALJ may consider a claimant's daily activities in evaluating her credibility).

Considering the ALJ's well-supported and well-reasoned credibility analysis, the Court cannot find that he erred in discounting Plaintiff's subjective allegations of pain.

**II. Substantial evidence supports the ALJ's decision to discount Dr. Ellis' opinion.**

Plaintiff next challenges the ALJ's discounting of Dr. Ellis' opinion. On March 4, 2013, Dr. Ellis completed a "Pain Questionnaire," in which he opined that: (1) Plaintiff's pain was caused by a mental nerve neuralgia;[2] (2) her pain complaints were credible; (3) she complied with medical treatment recommendations; (4) the side effects from her medications were unknown; (5) her pain prevented her from being able to concentrate and focus in the workplace, thus rendering her disabled; (6) it was unknown how many days of work per month she would miss; and (7) her pain levels had existed since January 1, 2007. R. at 536. The ALJ discounted

---

[2] Neuralgia is "[p]ain of a severe, throbbing, or stabbing character in the course or distribution of a nerve." *PDR Medical Dictionary* 1198 (1st ed. 1995).

5

Dr. Ellis' opinion because he found, among other things, that: it was conclusory and unsupported by his treatment notes; it unduly relied upon Plaintiff's subjective complaints; and it was inconsistent with other record evidence. R. at 29.

Where, as here, a treating source renders a medical opinion, the ALJ must assign it controlling weight if it is well-supported and not inconsistent with other evidence in the record. 20 C.F.R § 404.1527(c)(2). The ALJ, however, cannot give the opinion controlling weight if it is not supported by medically acceptable laboratory and diagnostic techniques, or if it is inconsistent with the other substantial evidence of record. *Id.*; *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010). A physician's opinion is further discountable if it is inconsistent with, or unsupported by, the physician's own treatment notes. *See Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002).

Here, the ALJ articulated several "good" and well-supported reasons for discounting Dr. Ellis' opinion. First, and foremost, Dr. Ellis' opinion contains no narrative discussion or citation to treatment notes; it only cursorily opines that Plaintiff is disabled because she cannot concentrate or focus. R. at 536. Conclusory opinions, such as this one, are of little value. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).

Second, Dr. Ellis' treatment notes do not support his opinion. Dr. Ellis never mentioned any deficits in concentration or focus, R. at 291-93, 295-98, 303, 316, 320, 325, 337, 342, 347-48, 351-52, 355-56, 521-22, but he eventually opined that these two limitations rendered Plaintiff disabled. R. at 536. This lack of support detracts from the opinion's probative value. *See Davidson*, 578 F.3d at 843.

Third, Dr. Ellis arguably relied upon Plaintiff's subjective allegations in forming his opinion. Because Dr. Ellis' treatment notes lacked any clinical observations regarding Plaintiff's

6

alleged inability to focus or concentrate, it is reasonable to infer that this limitation came from Plaintiff's own account of her limitations. Since the ALJ's finding to this effect is based upon a reasonable inference, the Court will not disturb it. *See Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010) ("[I]f it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, we must affirm the ALJ's decision.").

Finally, Dr. Ellis' opinion is arguably inconsistent with other record evidence. In July 2005, Dr. Ellis sent Plaintiff to psychologist Deborah Kukal, Ph.D. ("Dr. Kukal") for a psychological evaluation. R. 556-61. Although Dr. Kukal noted that Plaintiff had difficulties with concentration, she remarked that Plaintiff's "overall functioning [was] excellent." R. at 560-61. Dr. Kukal treated Plaintiff until October 2005, when she found that further therapy was no longer necessary. R. at 548. Dr. Kukal did not see Plaintiff again until August 2010 when Plaintiff sought bereavement counseling following her father's passing. R. at 545. During this visit, Plaintiff exhibited "positive psychological functioning," and exhibited no issues with focus or concentration. R. at 545. Similarly, non-examining state agency psychologist Geoffrey W. Sutton, Ph.D., opined that Plaintiff only exhibited mild difficulties in maintaining concentration, persistence, or pace. R. at 387. When read together, these notes demonstrate that although Plaintiff may have suffered some difficulties with concentration or focus, those difficulties were not disabling. And since these notes conflict with Dr. Ellis' unsupported finding, the ALJ did not err in discounting his opinion on this basis.

Because the ALJ provided several good and well-supported reasons for rejecting Dr. Ellis' opinion,[3] the ALJ did not err.

---

[3] Plaintiff also briefly asserts that the ALJ erred by not ascribing a specific weight to Dr. Ellis' opinion—i.e. no, some, or little weight. The Court finds no error here. Although the ALJ never specifically designated a weight, his thorough rejection of Dr. Ellis' opinion shows that he gave it little, if any, weight. R. at 29.

7

## Conclusion

Since substantial evidence on the record as a whole supports the ALJ's decision, the Commissioner's denial of benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  February 26, 2015           /s/ Greg Kays
                                    GREG KAYS, CHIEF JUDGE
                                    UNITED STATES DISTRICT COURT